IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JS HALBERSTAM IRREVOCABLE GRANTOR TRUST, Derivatively and on behalf of Portland General Electric Company,<br><br>      Plaintiff,<br><br>v.<br><br>JACK E. DAVIS; JOHN W. BALLANTINE; RODNEY L. BROWN, JR.; KIRBY A. DYESS; MARK B. GANZ; MARIE OH HUBER; KATHRYN J. JACKSON, PH.D.; MICHAEL A. LEWIS; MICHAEL H. MILLEGAN; NEIL J. NELSON, M. LEE PELTON, PH.D; MARIA M. POPE; CHARLES W. SHIVERY; JAMES P. TORGERSON; and JAMES LOBDELL,<br><br>      Defendants,<br><br>and<br><br>PORTLAND GENERAL ELECTRIC COMPANY,<br><br>      Nominal Defendant. | Case No. 3:21-cv-413-SI<br><br>OPINION AND ORDER |

PAGE 1 – OPINION AND ORDER

Michael G. Hanlon, LAW OFFICES OF MICHAEL G. HANLON PC, 101 SW Main Street, Suite 825, Portland, OR 97204; and David C. Katz, Mark D. Smilow, and Joshua M. Rubin, WEISSLAW LLP, 305 Broadway, Seventh Floor, New York, NY 10007. Of Attorneys for Plaintiffs JS Halberstam Irrevocable Trust.

Paul H. Trinchero and Eryn K. Hoerster, FOSTER GARVEY PC, 121 SW Morrison Street, 11th Floor, Portland, OR 97204; Dallas S. DeLuca and Stanton R. Gallegos, MARKOWITZ HERBOLD PC, 1455 SW Broadway, Suite 1900, Portland, OR 97201; and Susan L. Saltzstein, Alexander C. Drylewski, and Shaud G. Tavakoli, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, One Manhattan West, New York, NY 10001. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff JS Halberstam Irrevocable Grantor Trust brings this derivative action on behalf of nominal Defendant Portland General Electric (PGE) against several directors, board members, and executives at PGE. The parties have reached a Stipulation and Agreement of Settlement (Settlement) and now seek the Court's final approval under Rule 23.1 of the Federal Rules of Civil Procedure. For the reasons explained below, the Court approves the Settlement.[1]

## BACKGROUND

The Actions arise out of alleged misrepresentations about PGE's energy trading practices. Plaintiff Halberstam[2] alleges that PGE maintained a risk-averse, conservative profile that led investors and analysts to characterize PGE as a low-risk investment. Plaintiff further alleges that this low-risk profile was especially important to PGE given its relationship with Enron Corp.

---

[1] The Settlement fully resolves all derivative claims against all Defendants in this lawsuit, *JS Halberstam Irrevocable Grantor Trust v. Davis*, Case No. 3:21-cv-00413-SI (D. Or.) (the *Halberstam* Action), as well as in *Shimberg v. Pope, et al.*, Case No. 21CV02957 (Multnomah Co. Cir. Ct.) (filed January 26, 2021) (the *Shimberg* Action); *Ashabraner v. Pope et al.*, Case No. 21CV13698 (Multnomah Co. Cir. Ct.) (filed April 7, 2021) (the *Ashabraner* Action); and *Berning, et al. vs. Pope, et al.*, Case No. 3:21-cv-00783-SI (D. Or.) (filed May 21, 2021) (the *Berning* Action). The Court refers to the *Halberstam* Action, the *Shimberg* Action, the *Ashabraner* Action, and the *Berning* Action collectively as the Actions.

[2] Unless otherwise explicitly stated, "Plaintiff" refers to Plaintiff Halberstam, although the claims asserted in the *Shimberg* Action, the *Ashabraner* Action, and the *Berning* Action are substantially similar to the claims asserted in the *Halberstam* Action.

before Enron filed for bankruptcy. As with other power companies, PGE allegedly traded within the energy market to hedge against the uncertainty of future energy prices. This price-hedging form of energy trading is known as trading for "retail purposes." Plaintiff alleges that beginning in early 2020, PGE also engaged in energy trading for "non-retail purposes," that is, energy trading for the purpose of directly generating profits. As a result, Plaintiff contends, PGE's statements in its filings with the Securities and Exchange Commission stating that PGE did not engage in energy trading practices for non-retail purposes were false or misleading. In August 2020, PGE announced that it suffered a $127 million loss due to these high-risk non-retail trades. After PGE's announcement, its stock price dropped by 8.4 percent.

This derivative lawsuit and a related securities fraud class action followed. In the securities fraud class action (Case No. 3:20-cv-1583-SI), the plaintiff stockholders alleged that PGE and its executives violated the Securities and Exchange Act by making false or misleading statements about PGE's energy trading practices. The parties reached a settlement in that case, and this Court has approved that settlement.

In this derivative lawsuit, Plaintiff asserts claims for violations of the Securities and Exchange Act, breach of fiduciary duty, waste of corporate assets, contribution and indemnification, aiding and abetting, and gross mismanagement. Before Defendants filed any motion to dismiss, the parties reached a settlement. The Court preliminarily approved the Settlement on March 28, 2022. Now before the Court is Plaintiff's unopposed motion for final approval of the Settlement and award of attorney's fees, expenses, and service awards.

## DISCUSSION

### A. Settlement Approval

#### 1. General Standards

Under Federal Rule of Civil Procedure 23.1, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). Courts assess settlements of derivative claims using the standards for settlements under Rule 23(e), which requires that a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (applying Rule 23(e) to settlement of derivative action). The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

In a class settlement, a court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has articulated a number of factors guiding this review, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Lane*, 696 F.3d at 819. Courts within the Ninth Circuit "put

a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

The Ninth Circuit has also recognized that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

### 2. Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration of Future Litigation

Plaintiff contends that although it believes it has meritorious claims, proceeding with this litigation would be risky. Plaintiff would have to overcome Defendants' anticipated motion to dismiss in part by demonstrating that particularized alleged facts show futility of making a demand on the board of directors under *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996). Plaintiff also explains that even if its claims survive a motion to dismiss, Plaintiff would continue to face additional hurdles at subsequent stages of litigation, such as overcoming the business judgment rule, overcoming the exculpatory provisions of PGE's Articles of Incorporation, responding to any motion to dismiss filed by PGE's Special Litigation Committee, and proving damages. *See also In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378 (stating that "the odds of winning" a derivative lawsuit "are extremely small"). Besides the risk of dismissal before trial or loss at trial, continued litigation would be expensive and time-consuming. Thus, given the parties' uncertainty of the outcome and the complexity of this case, these factors favor approval of the Settlement Agreement.

### 3. Terms of the Settlement

Plaintiffs' counsel represents that the terms of the Settlement will confer substantial non-monetary benefits to PGE. Under the terms of the Settlement, PGE agreed to make changes to its Executive Risk Committee, Audit & Risk Committee, Nominating & Corporate Governance Committee, and corporate government guidelines, as well as to continue its whistleblower policy and formalize the job duties of the Corporate Compliance Officer. Plaintiff represents that these corporate governance reforms will provide structural changes to ensure greater supervision over energy trading risks and reporting. The Court finds that these structural reforms will benefit PGE and therefore favors approval.

### 4. Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The parties assert that although this case settled before formal discovery, they nevertheless exchanged sufficient information adequately to determine the strengths and weaknesses of their positions. The parties exchanged information during negotiations, during mediation sessions, in mediation statements, and in briefing Defendants' motion to dismiss. Further, Plaintiffs conducted extensive investigation before filing their Complaint. Thus, this factor does not weigh against approval. *See Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *14 (N.D. Cal. Mar. 24, 2017) (concluding that although the parties had not engaged in formal discovery, "the parties informally exchanged information and documents in connection with the three prior mediations conducted in this action," which favored approval of the settlement).

### 5. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Although counsel's views are instructive, they do not entitle the settlement to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). The Court is satisfied that Plaintiff's counsel has extensive experience litigating derivative actions and that Defendants' counsel are experienced litigators. Thus, the recommendation from the parties' counsel that the Settlement is fair, reasonable, and adequate favors approval.

### 6. Reaction of the PGE Stockholders to the Settlement

Plaintiffs published notice of the pending settlement and agreed-upon attorney's fees and costs on April 4, 2022. *See* ECF 37. No PGE stockholder has objected to the Settlement. This factor favors approval.

### 7. Evidence of Collusion

Courts must scrutinize fee arrangements for signs of collusion before approving a class action or derivative settlement. *Briseno v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (holding that courts must look for signs of collusion in pre- and post-class certification settlements); *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378 (stating that courts may not approve a derivative settlement that "is the product of . . . collusion among[] the negotiating parties"). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the

PAGE 7 – OPINION AND ORDER

parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth*, 654 F.3d at 947.

The Settlement contains a clear sailing provision, which is a sign of potential collusion. *See* ECF 32-1, ¶ 14. Under that provision, Defendant agreed not to object to Plaintiff's request for up to $750,000 in attorney's fees and costs. *Id.* The arm's length nature of the parties' negotiation, however, shows that despite the clear sailing provision, the parties engaged in no collusion. The parties reached a Settlement after undergoing a day-long mediation session with an experienced mediator followed by months of negotiations. Further, the parties reached agreement on fees using double-blind mediator proposals and only after they had agreed to the substantive terms of the Settlement. Thus, the Court finds the Settlement is not a product of collusion.

### 8. Conclusion

The above factors support approval. The Court therefore finds that the Settlement is fair, reasonable, and adequate.

### B. Attorney's Fees

Plaintiffs may be awarded attorney's fees in derivative suits if the resolution of the claim confers a "substantial benefit" on the corporation. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-95 (1970); *In re Taronis Techs., Inc. S'holder Derivative Litig.*, 2021 WL 842137, at *3 (D. Ariz. Mar. 5, 2021) ("Courts have consistently approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in corporate governance reforms but no monetary relief."). In determining the appropriate measure of attorney's fees, the court must exercise its discretion to achieve a "reasonable" result. *In re Bluetooth*, 654 F.3d at 942. The lodestar method "is especially appropriate in class actions 'where the relief sought—and obtained—is . . . primarily injunctive.'" *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021); *see*

*also Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 307 (D.D.C. 1996) ("Courts generally regard the lodestar method, which uses the number of hours reasonably expended, as the best approach in cases where the nature of the settlement evades the precise evaluation needed for the percentage of recovery method.").

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). In making this calculation, the district court should take into consideration various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

The Court is satisfied that the Settlement's corporate governance reforms confer a substantial benefit on PGE because they are designed to prevent the conduct at issue in this litigation from happening again. To determine whether Plaintiff's request for $721,564.48 in attorney's fees is reasonable, the Court will calculate Plaintiff's lodestar. Plaintiff's counsel submits that it reasonably expended 1,053.45 hours in litigating this case and reaching a settlement. Plaintiff's counsel expended these hours inspecting and analyzing PGE's Securities and Exchange Committee filings, reviewing documents obtained under Oregon Revised Statues § 60.774, drafting the complaint, drafting an extensive mediation statement, attending a mediation session, and engaging in negotiations with Defendant during the months following the mediation. Plaintiff's counsel represents that it deducted some time and expense in exercise of their judgment before submitting billing information to the Court for a lodestar calculation. *See*

ECF 36-8, ¶ 6; 36-10, ¶ 6; 36-13, ¶ 6. The court finds that 1,053.45 hours is a reasonable number of hours to achieve these results.

Plaintiff's counsel's billing rates for attorneys ranged from $220 to $1,050 and $70 to $375 for paralegals. Plaintiff's counsel represents that these billing rates are customary for attorneys and paralegals in their fields. The Court is satisfied that these are reasonable hourly rates for complex federal litigation in the relevant communities. *See Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ("Generally, the relevant community is the forum in which the district court sits. However, rates outside the forum may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" (citation omitted) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (stating that in determining reasonable hourly rates, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate").

The Court finds that the information provided is sufficient to conclude that Plaintiff's lodestar is $794,164.25. Plaintiff seeks $721,564.48 in attorney's fees, which constitutes a 0.91 multiplier. The Court finds that the attorney's fee award of $721,564.48 is reasonable. *See Littlejohn v. Copland*, 819 F. App'x 491, 494 (9th Cir. 2020) (affirming a 1.5 lodestar multiplier for a settlement providing only injunctive relief).

## C. Expenses

Plaintiffs also seek recovery of $28,435.52 in expenses. These costs include expenses for mediation, travel, factual and legal research, filing fees, photocopying, and pro hac vice costs. Court finds that these expenses have been reasonably and necessarily incurred in this case. *See,*

*e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) ("[J]urisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit."); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."). The Court therefore approves the award of $28,435.52 in the Settlement for expenses.

### D. Service (or Incentive) Award

Plaintiffs seek approval of four service (or inventive) awards of $2,000 each to be deducted from the attorney's fees and cost award and paid to the four representative plaintiffs in the four cases comprising the Actions.[3] "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. "An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected." *In re OSI Sys., Inc. Derivative Litig.*, 2017 WL 5642304, at *5 (C.D. Cal. May 2, 2017) (quoting *Cendant*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002)). The Court finds that the requested incentive award is reasonable.

### CONCLUSION

The Court GRANTS Plaintiff's unopposed motion for final approval of the proposed settlement, ECF 35. The Court awards Plaintiff's counsel $721,564.48 in attorney's fees and $28,435.52 in expenses. The Court also authorizes $8,000 in total service (or incentive) awards,

---

[3] Those plaintiffs are JS Halberstam Irrevocable Grantor Trust, Michael Shimberg, Melisa Ashabraner, and Jason Berning. *See* n.1, *supra*.

payable $2,000 each to JS Halberstam Irrevocable Grantor Trust, Michael Shimberg, Melisa Ashabraner, and Jason Berning and to be deducted from the attorney's fee and expense award. The Court retains jurisdiction over the parties and all matters relating to the Settlement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the Settlement and this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 9th day of May, 2022.

_____
Michael H. Simon
United States District Judge